Lee DAVENPORT, Appellee,

v.

CITY OF ALEXANDRIA, VIRGINIA, Charles Strobel, Chief of Police, Douglas Harman, City Manager, Appellants.

No. 81–1909.

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1982.

Decided July 21, 1982.

Barbara P. Beach, Asst. City Atty., Alexandria, Va., for appellants.

Alan L. Cohen, Alexandria, Va. (Kenneth E. Labowitz, Labowitz & Labowitz, Alexandria, Va., on brief), for appellee.

* Honorable Jackson L. Kiser, District Judge for the Western District of Virginia, sitting by designation.

1. The open spaces are:
   Market Square Plaza
   Torpedo Plant Plaza

Before MURNAGHAN and CHAPMAN, Circuit Judges, and KISER *, District Judge.

CHAPMAN, Circuit Judge:

The City of Alexandria, Virginia, appeals from the order of the district court holding part of City Ordinance No. 2609 unconstitutional. The ordinance regulates the use of public sidewalks, walkways and other public property in the city's central business district for certain activities. Appellee, Lee Davenport, a street musician, challenges the ordinance as unreasonable in time, place and manner as a restriction of his First Amendment right of free expression. We reverse.

The central business district consists of 201 acres of Alexandria's total acreage of 9,880 acres. The narrow streets in this historic area are lined with shops and restaurants catering primarily to the tourist trade. In 1981 Alexandria's city council passed ordinance No. 2609 which prohibits display or sale of foodstuffs and merchandise and conduct of certain businesses and similar non-business activity on the sidewalks, walkways and other public property in the central business district. The activities prohibited are listed in § 20–82 of the city's code of laws, and include exhibitions and performances. Ordinance No. 2609 permits exhibitions and performances in eight "open spaces" [1] within the district upon acquisition of a permit from the city manager. Performances are also allowed on sidewalks and walkways on certain civic holidays designated by city council. Permits are issued on a first-come, first-serve basis, and only three permits are issued per open space.

Lee Davenport is a bagpiper who has obtained a business license "to conduct the business of performing in the City of Alex-

Founders Park
Waterfront Park
Ramsey House Garden
Washington Way
King Street Right-of-Way Park
Bicentennial Center

andria." [2]  He wishes to perform his music and lecture on the history of bagpipes on the sidewalks and open areas of the central business district hoping that his audience will reward him for his efforts with contributions.

■ The cases dealing with reasonable time, place and manner restrictions set forth several conditions to their validity. Such restrictions and their enforcement cannot be based on the content of the speech thereby restricted. *Consolidated Edison Company of New York, Inc. v. Public Service Commission of New York*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Erzonznik v. City of Jacksonville*, 442 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972). A compelling governmental interest unrelated to speech must be served by the restriction. *Hickory Fire Fighters Assn. v. City of Hickory, N. C.*, 656 F.2d 917, 923 (4th Cir. 1981); *Grayned v. City of Rockford*, 408 U.S. 104, 117, 92 S.Ct. 2294, 2304, 33 L.Ed.2d 222 (1972). The ordinance containing restrictions on free expression [3] must be drawn with narrow specificity to be no more restrictive than necessary to secure those interests. *Hickory Fire Fighters, ante, Grayned, ante.*

■ Adequate alternative channels of communication must be left open by the restrictions. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Finally, reasonable time, place and manner restrictions may not vest in administrative officials' discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places. *Poulos v. New Hampshire*, 345 U.S. 395, 406, 73 S.Ct. 760, 767, 97 L.Ed. 1105 (1953).

The district court found (1) that the ordinance failed to provide specific standards under which permits would be issued or denied and (2) that it was not narrowly drawn to be no more restrictive than necessary to achieve the advanced governmental interest.

■ In finding that the challenged ordinance provided for too much administrative discretion in issuing permits, the court stated that Council had failed "to provide specific standards under which permits would be issued." Assuming that the ordinance vests the city manager with some discretion, a sufficient standard is found in subsection (a)(4) of the ordinance which provides for a straightforward first-come, first-serve system. As stated by the Supreme Court in *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981), such a system "is not open to the kind of arbitrary application that this court has condemned as inherently inconsistent with reasonable time, place and manner restriction. ...."

The issue of whether the ordinance is drawn with narrow specificity to be no more restrictive than necessary to secure a legitimate governmental interest is more difficult.

It is apodictic that the city advances a compelling interest where it seeks to protect "the safety and welfare of its citizens, including preservation of access to its public buildings and maintenance of vehicular and pedestrian traffic flow." *Hickory Fire Fighters, ante.* The district court is required to make an "independent evaluation, the crucial inquiry being 'whether the manner of expression is basically incompatible with the normal activities of a particular place at a particular time'. That inquiry in turn requires careful consideration of highly particularized facts, such as the length or lengths of city blocks, sidewalk widths and traffic patterns at various times and places in town." *Id.* at 924.

The district court may have undertaken such an inquiry in the present case, however, there are no findings of fact as to the

---

**2.** Complaint, p. 2.

**3.** Live entertainment is protected speech. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

particularized facts warranting striking the statute. The district court situated in Alexandria apparently took judicial notice of much of the factual information due to its familiarity with the area. The court concluded that the ordinance was overbroad in that its restrictions are not fitted to particular places and times.

It catches this plaintiff acting by himself, as well as a group composed of ten. It catches and prohibits the activity of this plaintiff and others regardless of the number of them that are in the block, regardless of the width of the sidewalk, and more importantly, regardless of whether they, by their activities, impede or deny public access to commercial buildings or impede the free flow of pedestrian traffic.

■ We find this case distinguishable from *Hickory Fire Fighters* in that the detailed approach of examining the width of every sidewalk in the central business district is not warranted. We do not hold that Alexandria's city council may disregard the requirement that its ordinances restricting speech must be limited to restrictions of expression basically incompatible with normal activities of a particular time at a particular place. We hold simply that performances and exhibitions are basically incompatible with the normal activities of the sidewalks in the central business district.

*Hickory Fire Fighters* involved a restriction on picketing rather than performances. The object of the picketer is not to draw a crowd but to engender sympathy for his position from passersby by publishing his message on placards. On the other hand, the primary purpose for performing on public sidewalks, indeed Davenport's purpose, is to draw a crowd that will reward the performer for proficiency at his trade.[4] The size of the audience is, for the most part, dependent upon the quality of performance and notoriety of the performer. Because these characteristics cannot be measured adequately prior to performance, the most important factor in terms of public safety,

crowd size, is undeterminable in advance. Factors such as the size of the troupe or width of sidewalks are relevant, but these are inadequate indicators of the actual impact a performer might have on traffic flow and access to public buildings. Because of this inadequacy it would be unreasonable to require the city to structure its ordinance to take into account the width of each foot of sidewalk in the central business district. The most narrow sidewalk might be unobstructed by a single performer who commands only passing notice; however, if the performer is a Frank Sinatra, a Willie Nelson or a Dolly Parton the widest sidewalk in Alexandria could not accommodate the crowd that would gather. Although plaintiff is a musician, he is in a business and has a business license—is his right to express himself in music for profit more protected than the right of a merchant to express himself through a sales presentation on the sidewalk in his effort to sell his wares, be they apples or automobiles?

As the Supreme Court said in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1975)

[W]e have no doubt that the municipality may control the location of theatres as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating these ordinances.

We are fully aware that the statute does not merely regulate business activity, however, appellee's challenge is based entirely on his desire to play his bagpipes on the sidewalk as his livelihood. The fact that his chosen profession involves commercial exploitation of free expression does not put him in a preferred position among other businessmen.

---

4. The ordinance regulates business and non-business performers. However, even with not-for-profit performers, the object is to draw a crowd.

Because the city cannot adequately anticipate the audience that might gather to see and hear performers on its sidewalks inquiry into the particularized facts of sidewalk widths, block lengths, and traffic patterns is of no help in determining whether the restrictions in the ordinance are narrowly tailored to particular time, place and manner of expression. Because audience size is undeterminable prior to performance, we conclude that the ordinance is drawn as narrowly as possible to protect the interest advanced by the city. The open spaces of the central business district and the remaining 9679 acres of the city outside the central business district provide ample alternative areas for expression.

REVERSED.

MURNAGHAN, Circuit Judge, dissenting:

Judge Chapman's articulate and eminently reasonable opinion has much to commend it. Still, I am persuaded that the ordinance does not pass First Amendment muster. It suffers from overbreadth and from a lack of sufficient standards for determining whether performance permits should be issued or denied.

Thus, I dissent for the reasons expressed by Judge Albert V. Bryan, Jr. in his opinion from the bench on August 13, 1981 in *Davenport v. City of Alexandria, et al.*, Civil Action No. 81–709–A in the United States District Court for the Eastern District of Virginia. In particular, I find the law correctly stated and applied in the following excerpts:

> The activity of the plaintiff is clearly First Amendment activity, and as such, is protected. It is not an absolute right, but when the City undertakes to restrict it in any way, then, it seems to me the burden is on the City to find some reasonable accommodation between the First Amendment activity of the plaintiff and the legitimate governmental interest it has in preserving the free flow of pedestrian traffic and public access to its commercial buildings.

> This ordinance, however, sweeps too broadly. It amounts to a total ban of this plaintiff and others of their performances on all the sidewalks within the central business district, which as shown on Defendant's Exhibit 3, is an approximately one-mile-long, four-block-wide area of the City, bisected by the main street of Alexandria, King Street, the City's main East-West street, and bounded by the river on the East and West Street on the West.

> It catches this plaintiff acting by himself, as well as a group composed of ten. It catches and prohibits the activity of this plaintiff and others regardless of the number of them that are in the block, regardless of the width of the sidewalk, and more importantly, regardless of whether they, by their activities, impede or deny public access to commercial buildings or impede the free flow of pedestrian traffic.

> . . . .

> So, while I am confident that a carefully and narrowly drawn ordinance would pass constitutional muster, insofar as overbreadth is concerned, if it limited the number, limited the area, and limited the scope of the performance, and hinged its application or the issuance or revocation of a permit to public access to commercial buildings and free flow of pedestrian traffic, this ordinance does none of those things. Suffering in the case of the ban on the sidewalk performances from overbreadth, and suffering in the case of the permissive granting of permits from a failure to provide specific standards under which permits would be issued or denied, the ordinance is unconstitutional, and the Court so declares.