Lee DAVENPORT, Appellee,

v.

CITY OF ALEXANDRIA, VIRGINIA, Charles Strobel, Chief of Police, Douglas Harman, City Manager, Appellants.

No. 81–1909.

United States Court of Appeals, Fourth Circuit.

Heard En Banc Dec. 7, 1982.

Decided June 22, 1983.

Barbara P. Beach, Asst. City Atty., Arlington, Va., for appellants.

Kenneth E. Labowitz, Labowitz & Labowitz, Alexandria, Va., on brief, and Alan L. Cohen, Alexandria, Va., for appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges, sitting en banc.

ERVIN, Circuit Judge:

This appeal arises out of a challenge by Lee Davenport, a street musician, to the constitutionality of Ordinance No. 2609 of the City of Alexandria, Virginia. Ordinance No. 2609 prohibits performances and exhibitions on the sidewalks, walkways or other public property of the central business district of Alexandria, and Davenport claims this infringes his first amendment right [1] to perform on and lecture about

---

1. The constitutional prohibition against government infringement of speech applies to states under the fourteenth amendment. *See Gitlow*

bagpipes, his particular specialty. Davenport also charges that a permit scheme created by Ordinance No. 2609 allowing limited performances in eight parks and plazas of the central business district confers unbounded discretion on the city manager to restrict protected expression.

The district court, 683 F.2d 853 (4th Cir. 1982), held for Davenport on both constitutional claims, ruling that the City's total ban of exhibitions and performances from the sidewalks of the central business district was an overbroad and hence unconstitutional restriction on speech, and that the permit scheme allowed city officials to dictate what speech could be heard in the designated open spaces of the district, in violation of the constitutional doctrine prohibiting prior restraints on speech.

On appeal by the City, a panel of this court reversed, holding that Ordinance No. 2609 was a reasonable regulation of the time, place and manner of speech, and that the permit scheme was constitutional because it instructed city officials to issue permits on a first-come, first-served basis leaving no room for discretion.

Davenport petitioned for rehearing *en banc,* which was granted. We now hold that the permit scheme is constitutional, but because we are unable to say that the ordinance is drawn as narrowly as possible to maximize speech while securing the

City's interest in public safety, we are unable to hold that Ordinance No. 2609 is a constitutional time, place and manner regulation of speech.[2] We are not prepared, however, to reinstate the district court's holding that Ordinance No. 2609 is unconstitutionally overbroad, for the opinion of the lower court does not set forth findings of fact sufficient to sustain that conclusion. We therefore remand to the district court with instructions to make explicit factual determinations in accordance with our holding in *Hickory Fire Fighters Association v. City of Hickory, North Carolina,* 656 F.2d 917 (4th Cir.1981).

### I.

On July 8, 1981, the city council of Alexandria enacted Ordinance No. 2609 to address public safety problems in the historic central business district of Alexandria. The central business district, known as Old Town, comprises 201 acres of the City. Many of the commercial establishments of Old Town cater to the tourist trade, so heavy pedestrian traffic is not uncommon. Ordinance No. 2609 bans certain activities from the sidewalks, walkways and public property of Old Town.[3] The ordinance applies to all amusement and entertainment activities requiring business licenses, as set out in section 20–82 of the City Code of Alexandria.[4] Included among the activities

---

*v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925).

**2.** The dissent argues that in requiring the City to prove its ordinance is drawn as narrowly as possible to maximize speech, we have raised the constitutional standard above present Supreme Court benchmarks which speak of "reasonable" restrictions of expression. *See Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York,* 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 75, 101 S.Ct. 2176, 2186, 68 L.Ed.2d 671 (1981); *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1970). As we interpret these authorities and others, *see, e.g., United States v. Grace,* —— U.S. ——, ——, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d 736 (1983); *Perry Education Ass'n v. Perry Local Educators' Ass'n,* —— U.S. ——, ——–——, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794, 804–805 (1983), the reasonableness of a

restriction is to be determined in a large measure by the narrowness with which it is drawn. For example, in *Grayned,* one of the cases relied on by the dissent, the Court wrote:

> Our cases make clear that in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest.

408 U.S. at 116–17, 92 S.Ct. at 2303–04. Finally, the dissent itself acknowledges at page 154 that government regulations affecting speech "must be drawn with reasonable specificity *so as to be no more restrictive than necessary.*" (Emphasis supplied).

**3.** Such activities are permitted on civic holidays.

**4.** Davenport has obtained the business license required by section 20–82.

is any "exhibition or performance." Any "similar nonbusiness activity" is likewise prohibited on the sidewalks of Old Town.

Exhibitors and performers are not totally banished from the central business district. The ordinance allows exhibitions and performances to take place in eight "open spaces"[5] located within the district, subject to acquisition of a permit from the city manager. Permits are issued on a first-come, first-served basis, and no more than three permits per city block may be issued at any one time. Also, the 9,880 acres of Alexandria lying outside the central business district are not subject to the ordinance.

## II.

First, we dispose of Davenport's argument that the permit scheme created by Ordinance No. 2609 bestows limitless discretion on city officials to govern the content of public expression. See *Shuttlesworth v. City of Birmingham, Alabama,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). A fair reading of Ordinance No. 2609 discloses no outlet for the exercise of discretion by city officials, because subsection (a)(4) states that "permits shall be issued on a first-come, first-served basis." No duly-licensed musicians or persons engaged in sim-ilar nonbusiness activity may be refused a permit if they are among the first three applicants for permission to perform in a given open space. *Cf. Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) (First-come, first-served system for allocation of space at state fair "is not open to the kind of arbitrary application that this court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.")

Davenport's second constitutional claim is more difficult to resolve. He contends that the ban on exhibitions and performances and other similar activities from the sidewalks of Old Town is an overly broad infringement of speech. The city's legitimate interest in the safe flow of pedestrian traffic could be accomplished, says Davenport, by a narrower ordinance that afforded some outlets for protected expression on the sidewalks of Old Town. Under Ordinance No. 2609, speech such as Davenport's[6] is confined to the district's parks and plazas, forums which Davenport claims are inadequate alternatives to the sidewalks of Old Town.

---

**5.** The open spaces are:

Market Square Plaza
Torpedo Plant Plaza
Founders Park
Waterfront Park
Ramsey House Garden
Washington Way
King Street Right-of-Way Park
Bicentennial Center

**6.** Live entertainment is protected speech. *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). The dissenting judges characterize Davenport's activity as "commercial speech" and suggest that a lesser standard of protection applies to speech intended to generate financial rewards. This is not our reading of the law. In the first place, "commercial speech" is a legal term of art referring to advertising, and Davenport's activity is unrelated to advertising. More importantly, the law draws no distinction between expression which generates a profit and expression which does not. For example, in *New York Times v. Sullivan,* 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964), the Supreme Court upheld the right of a newspaper to publish a paid political advertisement, and in *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 502, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952), the Court held that an "operation for profit" does not divest film distributors of first amendment rights.

The dissent also argues that since Old Town merchants are prohibited under Ordinance No. 2609 from placing their wares on the sidewalks, it is unfair to hold that Davenport may sell his product on the city streets. The short answer to this argument is that we hold no such thing in this opinion, but await further proceedings in the lower court. As to the substance of the argument, we would point out that there is no protected speech component in the placement of clothes racks on a public sidewalk, while, as the *Schad* Court makes clear, the content of live entertainment is protected expression. 452 U.S. at 65, 101 S.Ct. at 2181.

The city counters that Ordinance No. 2609 is a constitutional regulation of the time, place and manner of first amendment activity.

In order to pass constitutional muster as a valid time, place and manner restriction on speech, a government enactment must meet several conditions. The enactment and its enforcement cannot be based on the content of the speech thereby restricted. *Consolidated Edison Company of New York, Inc. v. Public Service Commission of New York,* 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972). A compelling governmental interest unrelated to speech must be served by the restriction on free expression, and the restriction must be drawn with narrow specificity to be no more restrictive than necessary to secure the government's interest. *Grayned v. City of Rockford,* 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972); *Hickory Fire Fighters Ass'n v. City of Hickory, N.C.,* 656 F.2d 917, 923 (4th Cir.1981). In addition, adequate alternative channels of communication must be left open by the restriction. *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 75–76, 101 S.Ct. 2176, 2186–87, 68 L.Ed.2d 671 (1981).

The parties agree that Ordinance No. 2609 is a content-neutral enactment motivated by the city's compelling interest in public safety. Where the parties differ is on the question of specificity, *i.e.,* whether the ordinance is narrowly tailored to the government's interest so as to minimize the curtailment of speech. The district court found it was not, writing that

[the ordinance] catches this plaintiff acting by himself, as well as a group composed of ten. It catches and prohibits the activity of this plaintiff and others regardless of the number of them that are in the block, regardless of the width of the sidewalk, and more importantly, regardless of whether they, by their activities, impede or deny public access to commercial buildings or impede the free flow of pedestrian traffic.

The problem we confront on this appeal is that the district court's conclusions are not supported by explicit factual findings, findings which must form the basis of a determination of overbreadth. The district judge, a long-time resident of Alexandria, was invited by the parties to take judicial notice of the character of Old Town, pursuant to Fed.R.Evid. 201(b), which permits a court to exercise judicial notice over facts "generally known within the territorial jurisdiction of the court." While we have no doubt that the district court's exercise of judicial notice was proper, the judge omitted from his opinion a recital of the facts derived from his personal observations of the historic district. After describing the geographical boundaries of Old Town the judge proceeded directly to his conclusions that the ordinance ensnared performers regardless of the number of performers on the block, regardless of the width of the sidewalk, and regardless of whether their activities impeded public access to buildings or the free flow of pedestrian traffic. These conclusions may be drawn from the language of the ordinance itself, of course, and require no empirical observation. The purpose of our review, however, is to determine whether the blanket proscription contained in Ordinance No. 2609 is the narrowest means of securing public safety in Old Town. Before we can make this determination, we need to know more facts about Old Town. In a constitutional challenge such as the present one, the task is to decide "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). That inquiry in turn "requires careful consideration of highly particularized facts, such as the length or lengths of city blocks, sidewalk widths, and traffic patterns at various times and places around town." *Hickory Fire Fighters Ass'n v. City of Hickory, N.C.,*

656 F.2d 917, 924 (4th Cir.1981).[7] Those facts, in this case, have yet to be adduced. We therefore remand to the district court to articulate the factual premises contemplated by *Hickory Fire Fighters*. Among the facts to be elucidated are:

1) the daily pedestrian and vehicular traffic patterns throughout Old Town;

2) the streets inside the district where constant congestion precludes sidewalk entertainment and the streets where entertainment could be presented safely, at least during some hours of the day;

3) the forms of entertainment that could be accommodated on those streets found to be safe for performances and exhibitions; and

4) the normal activities of the business district at different times and places.[8]

This is not meant as an exhaustive list of the fact findings which will enable review of the district court's ultimate conclusion. We invite the district court to make any other determinations—either through the taking of evidence or through a proper exercise of judicial notice—which it feels bear on the question of whether street musicians and other entrepreneurs could function compatibly with the normal activities of the business district. *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).[9] Finally, we emphasize that we reserve judgment on the ultimate question of the constitutionality of Ordinance No. 2609. Upon further elucidation of the facts, it may well become apparent that this ordinance is the least restrictive alternative for achieving safety goals in Old Town.

### III.

We reverse the district court's holding that the permit scheme set up by Ordinance

---

**7.** In the original panel opinion, some members of this court found *Hickory Fire Fighters* inapposite to the present case. The panel noted that *Hickory Fire Fighters* involved a restriction on picketing rather than performances. The panel went on to reason:

> The object of the picketer is not to draw a crowd but to engender sympathy for his position from passersby by publishing his message on placards. On the other hand, the primary purpose for performing on public sidewalks, indeed Davenport's purpose, is to draw a crowd that will reward the performer for proficiency at his trade. The size of the audience is, for the most part, dependent upon the quality of performance and notoriety of the performer. Because these characteristics cannot be measured adequately prior to performance, the most important factor in terms of public safety, crowd size, is undeterminable in advance. Factors such as the size of the troupe or width of sidewalks are relevant, but these are inadequate indicators of the actual impact a performer might have on traffic flow and access to public buildings. Because of this inadequacy it would be unreasonable to require the city to structure its ordinance to take into account the width of each foot of sidewalk in the central business district. The most narrow sidewalk might be unobstructed by a single performer who commands only passing notice; however, if the performer is a Frank Sinatra, a Willie Nelson or a Dolly Parton the widest sidewalk in Alexandria could not accommodate the crowd that would gather.

We disagree with this analysis. A picketer may very well hope to draw a crowd of onlookers. And some picket lines will inevitably attract attention. Consider, for example, a walk-out by the Hollywood actors guild. On the other hand, most street musicians will attract only the passing attentions of pedestrians rather than a large, expectant audience. Whatever the event, crowd size prediction will always be inexact. When the "actual impact" of a performance threatens public safety, *Hickory Fire Fighters* leaves room for a municipality to take emergency safety measures in response. All that *Hickory Fire Fighters* forbids is overbroad prior restraints on speech on the public sidewalks, which is precisely the claim we are dealing with here.

**8.** It is well settled that in a suit alleging the infringement of speech, the governmental defendant bears the burden of demonstrating that its enactment is narrowly tailored to the accomplishment of a compelling state interest. Here, the City of Alexandria is called upon to prove that traffic patterns and other factors justify a total exclusion of entertainment from sidewalks of Old Town. We realize that the detailed proof required by *Hickory Fire Fighters* saddles the City with a heavy burden, but where freedom of expression is at stake, a governmental entity must always be prepared to come forward with a strong factual justification for its action.

**9.** Since we have held that the permit system for Old Town's open spaces is constitutional, we also ask the district court to reconsider the question whether these open spaces offer an adequate alternative forum to the sidewalks.

No. 2609 was unconstitutional. We vacate the holding that Ordinance No. 2609 is overbroad and remand for further proceedings in accordance with this opinion. The order of the district court is, therefore,

REVERSED IN PART, VACATED IN PART AND REMANDED WITH INSTRUCTIONS.

CHAPMAN, Circuit Judge, concurring and dissenting:

I concur in the majority's holding that the permit scheme created by Ordinance No. 2609 is constitutional because it is free from arbitrary application, but I dissent from that part of the opinion which remands the case to the district court for further findings on the issue of whether the ordinance is an overly broad infringement of speech. I would hold it to be a valid time, place and manner regulation which serves a significant governmental interest and leaves open ample alternate channels for communication by the plaintiff and his bagpipes.

It is important to keep the facts in mind. We are dealing with a musician who wishes to attract an audience and to make money playing his instrument on the sidewalks of the central business district of Alexandria known as Old Town. This area comprises only 201 acres. It caters to tourist trade, is subject to heavy pedestrian traffic, and has areas with narrow sidewalks, alleyways and streets. Old Town is the forum within which plaintiff wishes to perform. His performance is not pure speech, but is commercial entertainment. Within the forum there are open spaces or parks in which he may perform under the ordinance by obtaining a permit available on a first-come, first-served basis. The City of Alexandria has more than 9,800 additional acres in which he may perform without restriction.

Ordinance No. 2609 amended § 33–17, Article 1, Chapter 33 of the Code of the City of Alexandria and reads in pertinent part as follows:

Subject to the requirements imposed in the following paragraph, no person shall place any goods, wares, merchandise, foodstuffs, etc., on or in any way obstruct the sidewalks or walkways for the display or sale of such goods, wares, merchandise, foodstuffs, etc., unless such goods, wares, merchandise, foodstuffs, etc. be allowed to remain on the sidewalk or walkway longer than is reasonably necessary for the delivery of the same. In addition, no business licensed pursuant to section 20–82 of this Code or similar nonbusiness activity shall be conducted on the sidewalks, walkways or other public property located in the central business district as defined in section 42–29 of this Code, except as permitted subject to the following:

(a) The city manager or his or her designee may, by permit, authorize the conduct of the above-noted businesses and activities in publicly owned open spaces of the central business district. The term "open spaces" shall be defined as stated in section 42–1 (47.1), but shall not include sidewalks, walkways or courthouse Plaza; and

(1) The receipt of a permit from any city agency authorized to issue permits for the use of any of the above described areas shall be construed to satisfy the requirements of subsection (a).

(2) Each permit shall be issued for a time period certain.

(3) No more than three (3) permits shall be issued for each city block at any one time except that no permit shall be required for any event sponsored by the city or an agency or department thereof.

(4) All permits shall be issued on a first-come, first-served basis.

(b) The city manager or his or her designee may authorize the conduct of the above-mentioned businesses and activities on the sidewalks, walkways or publicly owned open spaces of the central business district for an event held in connection with a civic holiday or activity designated by city council as such.

The city manager is authorized to establish reasonable and appropriate regulations including the imposition of a rea-

sonable fee for the issuance of permits under this section.

The activities covered by § 20–82 of the City Code include places of amusement and entertainment, and also mention performers, dance bands, exhibition or performance and beauty and talent contests for fee.

"It is also common ground, however, that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981).

All seem to agree that in dealing with a restriction on a protected right of expression such restriction

(1) must be reasonable in time, place and manner;

(2) may not be based upon the content of the speech thereby restricted;

(3) must be drawn with reasonable specificity so as to be no more restrictive than necessary to

(4) serve a significant governmental interest; and

(5) adequate alternative channels for communication must be left open and

(6) such restrictions may not vest in administrative officials the discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places.[1]

The majority finds that the ordinance meets muster under (6) above, but I submit that it meets the other five requirements as well.

The ordinance is reasonable in time, place and manner of restriction. It applies to only the central business district of Alexandria, a space containing 201 acres and specifically defined in § 42–29 of the City Code. The only restriction as to time is that not more than three permits may be issued per city block at any one time. Its manner of restriction is to prevent any use of its sidewalks and walkways for business or entertainment except on certain holidays or at other times when civic activities are being sponsored and everyone is aware that the sidewalks and walkways may be obstructed and the city can provide adequate police for direction of traffic and crowd control.

It provides eight parks or open spaces within the 201 acre Old Town, and this is reasonable as to place and provides adequate alternate channels for communication.

There is no effort by the city to base the restriction upon content of anyone's speech or expression. The ordinance does not apply to the usual first amendment speech such as political orators or persons passing out pamphlets. They are not mentioned in Ordinance No. 2609 or in the activities listed in Section 20–82. The ordinance is directed to commercial activity.

The ordinance serves a significant governmental interest in providing for the safe and orderly flow of traffic upon its streets and sidewalks within a small and congested area similar to the restrictions found in *Heffron, supra,* which stated:

Indeed the court below agreed that without Rule 6.05 there would be widespread disorder at the fairgrounds. The court also recognized that some disorder would inevitably result from exempting the Krishnas from the Rule. Obviously there would be a much larger threat to the State's interest in crowd control if all other religious, nonreligious and noncommercial organizations could likewise move freely about the fairgrounds distributing

---

**1.** *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Heffron v. International Society for Krishna Con-* *sciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

**155**

and selling literature and soliciting funds at will.

Given these considerations, we hold that the State's interest in confining distribution, selling and fund soliciting activities to fixed locations is sufficient to satisfy the requirement that a place or manner restriction must serve a substantial state interest.

A municipality or a state has a significant interest in protecting the safety and convenience of persons using its streets and sidewalks. *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

In providing the eight open spaces within the central business district for use by the plaintiff, the city provided adequate alternative locations, which are similar to the fair booth restriction and alternatives approved by the Supreme Court in *Heffron.* The State Fair in *Heffron* covered 125 acres and the Krishnas were restricted to one booth for sale and solicitation purposes. In discussing the rule in *Heffron* the court stated at 452 U.S. at 654, 101 S.Ct. at 2567:

> First, the rule does not prevent ISKCON from practicing Sankirtan anywhere outside the fairgrounds. More importantly, the Rule has not been shown to deny access within the forum in question. Here, the rule does not exclude Iskcon from the fairgrounds, nor does it deny that organization the right to conduct any desired activity at *some point* within the forum. (Emphasis added)

The eight public areas available in the central business district of Alexandria represent considerably more access to the forum than the Supreme Court approved in *Heffron.*

The ordinance does not restrict a person from singing or whistling or playing his bagpipe for his own amusement as he walks about the streets of the central business district. The restriction comes when this expression becomes commercial and rises to the level of a performance, and the singer,

whistler or piper seeks to perform for money and draw a crowd.

The plaintiff wants to play his bagpipes for money in the forum and has obtained a business license to do so. Should he be allowed to sell his product on the sidewalks of the central business district when other businessmen may not do so? Is there any difference between plaintiff's sale of his music on the sidewalks and other merchants' sale of their products—be they apples or automobiles? The answer to these questions is obviously "no" and the effort of the City of Alexandria in passing Ordinance 2609 is to treat all businessmen equally and fairly. As *Heffron* teaches, at 653, 101 S.Ct. at 2566:

> If Rule 6.05 is an invalid restriction on the activities of Iskcon, it is no more valid with respect to the other social, political, or charitable organizations that have rented booths at the Fair and confined their distribution, sale, and fund solicitation to those locations. Nor would it be valid with respect to other organizations that did not rent booths, either because they were unavailable due to a lack of space or because they chose to avoid the expense involved, but that would in all probability appear in the fairgrounds to distribute, sell, and solicit if they could freely do so. The question would also inevitably arise as to what extent the First Amendment also gives commercial organizations the right to move among the crowd to distribute information about or to sell their wares as respondents claim they may do.

Does a merchant with a place of business outside the central business district have a right to set up shop on one of the sidewalks in Old Town?[2] Of course not, because the city has the right to control its streets and sidewalks and also has the right to zone and restrict businesses to certain areas. As the Supreme Court said in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1975)

---

**2.** Davenport is a resident of Baltimore, Maryland and comes to Alexandria when he has the urge to perform in Old Town.

[W]e have no doubt that the municipality may control the location of theatres as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating these ordinances.

We are fully aware that the statute does not just regulate business activity, however, appellee's challenge is based entirely on his desire to perform by playing his bagpipes on the sidewalk and solicit contributions. Plaintiff is a businessman and must be treated as such. He is not a soapbox orator, who wishes to express his political beliefs.[3]

The majority leans heavily upon *Hickory Fire Fighters Association v. City of Hickory, North Carolina,* 656 F.2d 917 (4th Cir. 1981). However, the restriction in *Hickory* covered all sidewalks in the city and not just 201 acres out of a total of 10,000 acres in Alexandria; no adequate alternate areas were provided; and although the pickets were seeking to improve their financial circumstances, they were not seeking pay from any spectators or passersby that might be attracted by their activity.

The majority opinion sets a higher standard than the Supreme Court has required in judging the constitutionality of a time, place, and manner restriction. The majority states that it cannot find the ordinance constitutional "... because we are unable to hold that the ordinance is drawn as *narrowly* as possible to maximize speech while securing the city's interest in public safety ...". Later in describing the purpose of the appellate review the majority finds it "is to determine whether the blanket prescription contained in Ordinance No. 2609 is the *narrowest* means of securing public safety in Old Town." (Emphasis added).

The Supreme Court does not require the narrowest restrictions but uses a rule of reason. *Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York,* 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980) found: "A restriction that regulates only the time, place or manner of speech may be imposed so long as it is *reasonable.*"

In *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 75, 101 S.Ct. 2176, 2186, 68 L.Ed.2d 671 (1981) the court states: "To be *reasonable,* time, place and manner restrictions not only must serve significant state interest but also must leave open adequate alternate channels of communication."

In *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1970) is found: "The nature of a place, 'the pattern of its normal activities, dictate the kinds of regulations of time, place and manner that are *reasonable.*'"

In determining what is reasonable we must apply the standard of review directed by *Schad.* What time, place and manner restriction is reasonable for a commercial performer? I submit Ordinance No. 2609 is reasonable.

In setting forth the four factual findings to be made by the district court on remand, the majority has assigned the district court an unreasonable and an improper task. It is unreasonable because the district court must consider every sidewalk, walkway and street within Old Town together with its traffic flow and then determine what performances or exhibitions can be safely accommodated at which times and on which dates. The findings resulting from such inquiry will be so voluminous and detailed that they will be too cumbersome to be useful.

The city cannot adequately anticipate the audience that might gather to see and hear performers on its sidewalks. Inquiry into the particularized facts of sidewalk widths, block lengths, and traffic patterns is of no

---

**3.** "The standard of judicial review is determined by the nature of the right assertedly threatened or violated rather than by the power being exercised or the specific limitation imposed." *Schad v. Borough of Mount Ephraim,* 452 U.S. at page 68, 101 S.Ct. at 2182.

help in determining whether the restrictions in the ordinance are narrowly tailored to particular time, place and manner of expression. Because audience size is undeterminable prior to performance, the ordinance is drawn as narrowly as possible to protect the interest advanced by the city. The open spaces of the central business district and the remaining 9800 acres of the city outside the central business district provide ample alternative areas for expression.

The conditions of remand are improper because such detailed findings and conclusions will result in the district court rewriting the ordinance. This is not a judicial function. The remand indicates that the district court is to determine when, where, and what type performances and exhibitions may be conducted in the central business district. Are outsiders to be allowed to use the sidewalks for exhibit, performance and sale when local merchants in the central business district cannot so much as place their goods on the sidewalk for display? No one would seriously question that a city has a significant interest in keeping its sidewalks clear for pedestrian traffic and safety, and in so doing the city may prevent local merchants from using the sidewalks in front of their shops to display and sell their goods and wares. *Young v. American Mini Theatres, supra.* However, the majority is instructing the district court to find where these activities may be conducted on the same sidewalks, which are off limits to taxpaying merchants.

Performers soliciting contributions and exhibitors soliciting sales on such sidewalks are conducting business. They should be subject to the same restrictions on sidewalk use as are local shopkeepers. The fact that appellee has a profession that involves commercial exploitation of free expression does not put him in a preferred position among businessmen.

Ordinance No. 2609 is a reasonable restriction upon the use of sidewalks and walkways within an admittedly congested business area. It provides adequate alternate areas within the forum for expression.

We should leave this matter to the elected officials of Alexandria. The record reflects that City Council considered other proposed ordinances in an effort to solve the sidewalk congestion problem and adopted No. 2609 as the most reasonable.

I would find Ordinance No. 2609 constitutional and reverse the district court.