911 So.2d 247 (2005)
The STATE of Florida, Appellant,
v.
Ron Andrew O'DANIELS, Appellee.
No. 3D04-1075.
District Court of Appeal of Florida, Third District.
September 28, 2005.
*249 Charles J. Christ, Jr., Attorney General, and John D. Barker, Assistant Attorney General; Murray H. Dubbin, City Attorney, and Sheri Sack, First Assistant City Attorney, for appellant.
Bennett H. Brummer, Public Defender, and John Eddy Morrison, Assistant Public Defender, for appellee.
The American Civil Liberties Union Foundation of Florida, Inc. and Rosalind J. Matos, as Amicus Curiae for appellee.
Before RAMIREZ, WELLS, and CORTIAS, JJ.
CORTIAS, Judge.
Ron Andrew O'Daniels ("O'Daniels") was playing his guitar on Ocean Drive and *250 14th Street in the City of Miami Beach, Florida ("City"). Three police officers observed O'Daniels and instructed him to stop playing his guitar. He refused, stood up, and stepped toward the officers. An altercation ensued and O'Daniels was arrested for violating Miami Beach Ordinance 2001-3313 entitled "Street Performers and Art Vendors" ("ordinance").
The ordinance on appeal bans all street performances and art vending from a fixed location in the entire City, except for in eleven locations where a permit is required. Section 18-902 of the ordinance provides, in relevant part:
It shall be unlawful for any person to engage in any street performance or art vending on public property from a fixed location without first obtaining a permit as required by this article.
Section 18-901 defines a street performance as including "acting, singing, playing musical instruments, pantomime, juggling, magic, dancing, puppetry, and creating items for sale under street vending as hereinafter defined, on public property." Street vending of art, art vending, and street vending are all defined to include "the display, creation and/or sale on public property of art by a permittee."
Section 18-903 entitled "Permit application" provides that permit applications are subject to the review and approval of the city occupational licensing office. It states that the application will be approved "[i]f the application form is complete and consistent with the ordinance from which this section derives, the applicant agrees to abide by the terms of said ordinance, and the application fee is paid. . . ."
Section 18-904 entitled "Areas reserved for street performances and art vending" allows for street performances and art vending in eleven designated areas: five on Lincoln Road; three on Ocean Drive; one on Normandy Fountain Green Space; one on Ocean Terrace; and one in Liebman Park.[1] In the event that the number of requests to perform at the designated locations exceeds the number of locations available, "the locations will be assigned for up to [a] three-month period, by a lottery. . . ."
The stated purpose of the ordinance is "to encourage such performances and vending to the extent that they do not interfere with the reasonable expectations of residents to the enjoyment of peace and quiet in their homes, the ability to conduct their businesses and serve their patrons uninterrupted, and the public's use of the City's rights-of-way. . . ."
On July 14, 2003, O'Daniels filed a sworn motion to dismiss the count against him for violating the ordinance on the basis that the ordinance was unconstitutional. On November 7, 2003, the trial court entered an order finding the ordinance unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and Article I, sections 4 and 9 of the Florida Constitution.[2] On November 19, 2003, the trial court entered a final order dismissing the count and certifying its order as one involving a question of great public importance. The State of Florida ("State") and the City appeal from *251 the trial court's final order. The American Civil Liberties Union Foundation of Florida, Inc. ("ACLU") submitted an amicus curiae brief in response to their appeal of the trial court's order.
We review the trial court's conclusions of law and application of the law to the facts de novo. See One World One Family Now v. City of Miami Beach, 175 F.3d 1282, 1285 n. 4 (11th Cir.1999)(citing Simmons v. Conger, 86 F.3d 1080, 1084 (11th Cir.1996)).
The First Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, protects speech and expressive conduct. Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); Rodriguez v. State, 906 So.2d 1082, 1088 (Fla. 3d DCA 2004), aff'd, 30 Fla. L. Weekly S495, ___ So.2d ___, 2005 WL 1475362 (Fla. 2005). In determining whether the government has infringed on First Amendment protections, "the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." One World, 175 F.3d at 1285. Street performances are a form of expression, which are afforded constitutional protection under the First Amendment. See, e.g., Horton v. City of St. Augustine, 272 F.3d 1318 (11th Cir.2001); Davenport v. City of Alexandria, Virginia, 710 F.2d 148 (4th Cir.1983); Friedrich v. City of Chicago, 619 F.Supp. 1129 (N.D.Ill.1985). Likewise, art vending is entitled to full First Amendment protections. See, e.g., Bery v. City of New York, 97 F.3d 689, 695-96 (2d Cir.1996)(citing Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 756 n. 5, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)).
Since street performances and art vending are protected by the First Amendment, we must next determine whether the government action at issue is content neutral or content based. One World, 175 F.3d at 1286. If the government action is content based, we apply a strict scrutiny test requiring the government to show that its action is "narrowly tailored and serves a compelling state interest." Id. (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)); Rodriguez, 906 So.2d at 1088. However, if the government action is content neutral, we apply a time, place, and manner analysis. City of Ladue v. Gilleo, 512 U.S. 43, 55-56, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 518, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); One World, 175 F.3d at 1286.
An ordinance is content based when the government adopts it as a regulation on speech because of disagreement with the message the speech conveys. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)(citing Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). An ordinance is content neutral if it serves purposes unrelated to the content of the speech or expression. Ward, 491 U.S. at 791, 109 S.Ct. 2746 (citing Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)).
O'Daniels contends that the ordinance is content based because it discriminates against performers and entertainers in favor of other speakers, such as preachers, election campaigners, nightclub promoters, and other religious, political, and commercial speakers. However, an ordinance is not content based merely because "it has an incidental effect on some speakers or messages but not others." See Ward, 491 U.S. at 791, 109 S.Ct. 2746 (citing Renton, 475 U.S. at 47-48, 106 S.Ct. 925).
*252 Furthermore, the City's justification for the ordinance has nothing to do with the content of the street performances or art vending, or disagreement with the messages that they convey. See, e.g., Ward, 491 U.S. at 792, 109 S.Ct. 2746 (quoting Boos v. Barry, 485 U.S. 312, 320, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)). The principal justification for the ordinance at issue is the City's desire to preserve the "reasonable expectations of residents to the enjoyment of peace and quiet in their homes, the ability to conduct their businesses and serve their patrons uninterrupted, and the public's use of the City's rights-of-way." The City and State maintain that the City also has an interest in protecting the health, safety, and welfare of its citizens, and regulating the pedestrian traffic on its streets. We find the ordinance to be content neutral as it does not target the content of the street performances or art vending.
Having found that the ordinance is content neutral, we examine whether it satisfies the time, place, and manner test. In a traditional public forum, such as a city street or sidewalk, the government may impose reasonable limitations on the time, place, and manner of protected speech provided that such limitations (1) are justified without reference to the content of the regulated speech, (2) are narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for communication of information. Ward, 491 U.S. at 791, 109 S.Ct. 2746 (quoting Clark, 468 U.S. at 293, 104 S.Ct. 3065). The government must demonstrate that it meets all three criteria. Ward, 491 U.S. at 791, 109 S.Ct. 2746; City of Alexandria, 710 F.2d at 151. With respect to the first prong, we have already determined that the City's justification for the ordinance is unrelated to the content of street performances or art vending.
Next, we consider whether the ordinance is narrowly tailored to serve a significant government interest. We review whether the blanket prohibition in the ordinance barring all street performances and art vending, except for in eleven locations where a permit is required, is a narrow means of preventing traffic congestion. See, e.g., City of Alexandria, 710 F.2d at 151.
It is well-established that a city is entitled to regulate pedestrian traffic, a significant interest which constitutes "one of the more specialized and intensely local types of problems." See One World, 175 F.3d at 1287 (citing Schneider v. State of New Jersey, 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939)). Moreover, an ordinance need not be the least restrictive or least intrusive means of serving the City's interests. See Ward, 491 U.S. at 798, 109 S.Ct. 2746; One World, 175 F.3d at 1287. Nevertheless, in order to satisfy the narrow tailoring requirement, the City has the burden of showing that its regulation on expression is "not substantially broader than necessary to achieve the government's interests." See Ward, 491 U.S. at 799-800, 109 S.Ct. 2746.
O'Daniels and the ACLU describe a series of nonsensical but, nevertheless, potential violations of the ordinance. For example, the following scenarios constitute violations of the ordinance: (1) a child playing a harmonica on the beach for his or her parents; (2) a lover sitting in a city park serenading his or her partner; (3) a teenager showing off dance steps on a city sidewalk to impress a friend; and (4) a parent at a beachside picnic making a quarter magically disappear and then reappear from behind a child's ear. While the potential for nonsensical and implausible application does not render the ordinance unconstitutional, such examples serve to illustrate the dangers of a broad *253 ordinance and the need for narrow tailoring.
Furthermore, in determining whether an ordinance is narrowly tailored, our court is tasked with deciding "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); see also City of Alexandria, 710 F.2d at 151. This determination requires careful consideration of certain factors including, but not limited to: (1) the daily traffic patterns throughout the City; (2) the streets where constant congestion precludes street performances and art vending, and the streets and hours of the day where performances and art vending may be presented safely; and (3) the forms of street performances and art vending that could be accommodated on such streets. See City of Alexandria, 710 F.2d at 151-52.
Although we recognize the City's interests in traffic regulation, we find that the City and State have not met their burden of showing that the ordinance is narrowly tailored. The ordinance applies to all public property, rather than just the areas that have known problems with traffic congestion. The City and State have not presented evidence that all public areas of Miami Beach, including every beach, park, sidewalk, and street, necessarily require a ban on street performances and art vending to regulate traffic. The City and State have also failed to provide evidence that street performances and art vending are the cause of the traffic congestion. Most importantly, they have not shown which public areas are available to accommodate street performances and art vending, except for the designated eleven locations where a permit is required. These eleven locations can hardly serve as the only locations where street performances and art vending may be presented safely in the entire City.
Instead, the City and State claim they cannot make such a determination because the City's "hot spots" are constantly changing. This claim does not satisfy the requirement that the ordinance be among the "narrowest means of securing" the City's interest. See, e.g., City of Alexandria, 710 F.2d at 151. Therefore, we find that banning street performances and art vending everywhere in the City, with the exception of eleven locations, is substantially broader than necessary to address the City's stated traffic concerns.
We next consider whether the ordinance leaves open ample alternative channels for communication of information. Determining that an alternative is adequate requires us to look at the expense and convenience of the alternative, as well as whether the alternative is a "practical substitute." City of Ladue, 512 U.S. at 57, 114 S.Ct. 2038 (applying the time, place, and manner test to an ordinance regulating residential signs, the Court stated "[r]esidential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute"). Additionally, an adequate alternative location is one where the street performers can reach their intended audience. Id.; Bay Area Peace Navy v. U.S., 914 F.2d 1224 (9th Cir.1990).
The City and State contend that the ordinance allows performers and vendors to perform and vend as long as they do not take up a fixed position. In essence, they contend that as long as street performers and vendors keep moving, as opposed to taking up a fixed position on public property, their fundamental rights under the *254 United States and Florida Constitutions are in no way abridged. The City and State also maintain that "[a]ll of the fixed locations are generally occupied and many additional performers and artists engage in their protected expression without taking up a fixed position." Although we can hardly deny society's increased mobility through the years, we do not foresee the day when one's First Amendment rights will exist only, as the City purports to limit, in locomotion.
The ordinance, as currently written, does not satisfy the City's obligation to leave open ample alternative channels for communication. The Supreme Court has stated that "[t]he First Amendment mandates that we presume that speakers, not the government, know best both what to say and how to say it." Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 790-91, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). It is up to the street performer to decide whether to stand in a fixed position rather than to perform on the move. Furthermore, "[t]he mere existence of an alternative method of communication cannot be the end of the analysis. We must also give adequate consideration to whether the alternatives are ample. Whether an alternative is ample should be considered from the speaker's point of view." Weinberg v. City of Chicago, 310 F.3d 1029, 1041 (7th Cir.2002).
Finally, we note that the City's and State's reliance on Horton and One World is misplaced as those cases are entirely distinguishable. In Horton, the court considered the constitutionality of a St. Augustine street performance ordinance which was practically identical to the Miami Beach ordinance at issue, except that it "provide[d] that street performances `may take place in all public areas' of the City except for a prohibited four-block area." Horton, 272 F.3d at 1321. As such, the constitutionally upheld St. Augustine ordinance is the polar image of Miami Beach's ordinance; the former was narrowly tailored to address the traffic concerns in a four-block area while the latter seeks to limit constitutionally protected expression throughout an entire municipality, except for in eleven designated areas with a permit. The St. Augustine and Miami Beach ordinances, while similar in the conduct they regulate, are worlds apart in their application.
The instant ordinance is also distinguishable from the ordinance in One World. In One World, the Eleventh Circuit addressed the constitutionality of an ordinance that added an exception to the general prohibition on the use of portable tables. The exception allowed nonprofit groups to use tables for solicitation and vending at five locations in Miami Beach's commercial district. One World, 175 F.3d at 1284. The court noted "[t]his case does not involve pure speech or expressive conduct, but rather a medium used to facilitate communication, specifically the use of portable tables on a public sidewalk." Id. at 1285.
In finding the ordinance constitutional under a time, place, and manner analysis, the Court stated:
Since the ordinance does not regulate solicitation or vending or other First Amendment activity without the use of a table, One World can speak, communicate and sell its merchandise freely on the west side of the street. Indeed, One World is still free to speak, vend, disseminate ideas or merchandise, or solicit contributions anywhere in the Art Deco district, and for that matter in the entire city. The only activity prohibited under the ordinance is the use of portable tables on the west side of Ocean Drive.
*255 Id. at 1288. Ample alternatives for communication of information existed under the One World ordinance because nonprofit groups were still able to solicit and vend; they were only prohibited from using a table to do so, except for in the specified locations.
The ordinance in the instant case is distinguishable because it does not allow street performers and art vendors to "freely" perform and sell merchandise. Rather, the ordinance makes it illegal to perform or vend "on public property from a fixed location." The mere fact that street performers and vendors can still perform and vend from nonfixed locations does not mean that ample alternatives for communication exist.
Although we recognize the City's traffic and safety concerns, we are confident that the constitutional infirmities of the ordinance may be remedied by much more narrowly tailored regulation that satisfies the City's stated needs without harm to the First Amendment rights of its citizens. As currently written, however, the ordinance violates the United States and Florida Constitutions.
Affirmed.
NOTES
[1] O'Daniels was playing his guitar on Ocean Drive and 14th Street, which is not one of the designated areas where a street performance is authorized with a permit.
[2] Article I, section 4 of the Florida Constitution is similar to the First Amendment of the United States Constitution in that it provides: "[n]o law shall be passed to restrain or abridge the liberty of speech or of the press." Art. I, ß 4, Fla. Const. Article I, section 9 provides: "[n]o person shall be deprived of life, liberty or property without due process of law. . . ." Art. I, ß 9, Fla. Const.