ONE WORLD ONE FAMILY NOW, a California Nonprofit Corporation, Bhativedanta Mission, Ltd., a Hawaii Nonprofit Corporation, and Gregory Scharf, an individual, Plaintiffs-Appellants,

v.

CITY OF MIAMI BEACH, a Florida Municipality, and Richard Barreto, Defendants-Appellees.

No. 98-4091.

United States Court of Appeals,

Eleventh Circuit.

May 20, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-3314-CIV-FAM), Federico A. Moreno, Judge.

Before COX and BARKETT, Circuit Judges, and FAY, Senior Circuit Judge.

BARKETT, Circuit Judge:

One World One Family Now, a California nonprofit corporation dedicated to educating the public about spiritual ecology, Bhaktivedanta Mission, Ltd., a Hawaii nonprofit corporation dedicated to the dissemination of its religion, and Gregory Scharf, an individual (collectively "One World"), appeal from a final judgment in favor of the city of Miami Beach, Florida and chief of police Richard Barreto (collectively "the city"). One World sought declaratory and injunctive relief under 42 U.S.C. § 1983 alleging that a Miami Beach ordinance restricting the sale of message-bearing t-shirts from tables on the public walkways of Miami Beach's commercial district violated the First Amendment. The district court denied relief. We affirm.

*Background*

This case involves a city ordinance affecting Ocean Drive, a main tourist attraction because of its large concentration of nightclubs and popular restaurants on an oceanfront strip in the historic Art Deco district of Miami Beach. The Art Deco district encompasses a significant portion of the southern end of the city. Because the area has been designated as part of the National Registry of Historic Places, the city has heavily regulated the district to protect its unique aesthetics and ambience. Within the district, vending from

streets and sidewalks is prohibited. The only exception to this general prohibition is that full-service restaurants operating from an enclosed structure may serve food on outdoor tables.[1]

In September 1997, the city enacted the Nonprofit Vending and Distribution Ordinance ("ordinance"),[2] which added another exception to the general ban on portable tables: allowing nonprofit groups the limited use of tables for solicitation and vending at five locations on the east side of the street in Miami Beach's commercial district. The ordinance provided for a restricted number of such tables by nonprofit groups, for which interested eligible parties can apply by lottery.[3] The ordinance only permits nonprofit organizations to use the tables from 8 a.m. to one half hour after sunset.

As soon as the ordinance became effective, One World filed this action seeking declaratory and injunctive relief, as well as an order temporarily restraining enforcement of the ordinance. One World claimed that because the west side of the street provides better opportunities to reach people, and the ordinance limits its activity to the east side before sunset, the ordinance has a chilling effect on speech. The city countered that the ordinance helps to maintain smooth pedestrian traffic flow as well as the aesthetic beauty and character of the district, and also helps prevent crime at nighttime. After a non-jury trial, the district court denied One World's motion for injunctive relief and entered judgment on the merits in favor of Miami Beach, finding the ordinance to be a valid time, place, and manner restriction. This appeal followed.[4]

---

[1]MIAMI BEACH, FLA., ZONING ORDINANCE 89-2665, §§ 5-7, 18, 19 (1996) (precluding all commercial activity from streets and sidewalks with the exception of sidewalk cafés, and subjecting the buildings, cafés and their related fixtures to a design review process); *see also* MIAMI BEACH, FLA., CITY CODE ch. 39, art. VI (1997) (regulating the size, location, and design of the outdoor café tables).

[2]MIAMI BEACH, FLA., CITY CODE ch.25, art. 25-66.1 (1997).

[3]Three of the sites are located on sidewalks on the east side of Ocean Drive (the side closer to the beach) at 7th, 9th, and 11th streets, and are set back 25 feet from the curb. The other two areas are located in the middle of the Lincoln Road Mall, at 400 and 727 Lincoln Road. Art. 25-66.1(e)(4)(iv) and (v). The Lincoln Road sites are not at issue here.

[4]We review the district court's conclusions of law *de novo*. The district court's application of the law to the facts also is subject to *de novo* review. *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir.1996) (internal citations omitted).

*Discussion*

The First Amendment protects the communication of ideas. We have recognized that ideas may be communicated through pure speech, expressive conduct, or the use of various media that facilitate the communication of ideas. This case does not involve pure speech or expressive conduct,[5] but rather a medium used to facilitate communication, specifically the use of portable tables on a public sidewalk.[6] A public sidewalk is a "quintessential public forum[ ]." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The question presented here is whether the city can constitutionally permit only eating establishments to place tables on a public sidewalk outside of their restaurants while prohibiting all other commercial establishments[7] and nonprofit groups from placing tables on those same sidewalks.

I

In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment. In this case, the initial question is whether using tables to assist in the sale of the t-shirts is protected activity. We find that, under the law of this Circuit, that question has been answered in the affirmative. In *International Caucus of Labor Committees v. Montgomery,* 111 F.3d 1548 (11th Cir.1997), we characterized a ban on tables on city sidewalks as one "regulating expressive activity in a public forum" and upheld the

---

[5]It has long been recognized that t-shirts carrying messages related to one's political or religious mission constitutes protected speech, and the city does not contend otherwise. *See Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 576, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) ("[W]earing a T-shirt or button that contains a political message ... [is] protected speech even in a non-public forum.")

[6]For other examples of media which facilitate the communication of ideas, *see Sentinel Communications Co. v. Watts,* 936 F.2d 1189, 1196 (11th Cir.1991) (news racks); *Heffron v. International Society of Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (fairground booths).

[7]Although all other commercial establishments are likewise prohibited from placing tables on the sidewalk, this appeal involves no challenge from such an establishment.

3

ordinance only after concluding that it met the standards for a valid time, place, and manner regulation of speech in a public forum. *Id.* at 1550, 1551-53; *see also id.* at 1553 (Anderson J., dissenting) ("I agree with the majority opinion that the City of Montgomery's policy does regulate expressive activity in a public forum and therefore must pass the time, place, and manner test."). While we noted that the Seventh Circuit held that the erection of tables did not implicate the First Amendment, we did not adopt this view. *See International Society for Krishna Consciousness v. Rochford,* 585 F.2d 263, 270 (7th Cir.1978) (finding that an ordinance prohibiting the erection of tables "does not facially restrict the exercise of guaranteed rights"); *International Caucus of Labor Committees. v. City of Chicago,* 816 F.2d 337, 339 (7th Cir.1987) (declining to overturn *Rochford* ). Thus, our precedent establishes that tables used to distribute protected literature come within the protection of the First Amendment.

II

After determining that the activity in question is protected by the First Amendment, we must next determine whether the relevant government conduct is content neutral or content based. If it is content based, we never reach the time, place, and manner analysis, applying instead the strict scrutiny test which requires the government entity to show that the action is narrowly tailored and serves a compelling state interest. *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. It is only if we find the governmental action content neutral that we examine whether the action is a permissible time, place, and manner regulation. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 518, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (A Court's determination that an ordinance is content based "take[s] the regulation out of the domain of time, place, and manner restrictions.")

In this case, One World argues that because the city permits an exception to the general ban on all tables on the west side of the street for restaurants but not for nonprofit organizations, the ordinance at issue discriminates based on content. As support for this proposition, One World directs us to *Metromedia,* 453 U.S. at 503, 101 S.Ct. 2882, where the Court considered a city ordinance which permitted on-site billboards

4

with commercial messages specifically related to the commercial use of the premises, but prohibited the use of the on-site billboards to carry both commercial messages not related to the site and also some noncommercial messages.[8] The Court upheld the ordinance insofar as it regulated commercial speech, permitting the distinction between commercial speech related to the site and commercial speech that did not have a connection to the billboard premises. However, the Court found that limiting the content of the billboards to commercial speech while not permitting all non-commercial messages "effectively inverts" the law by affording greater protection to commercial than to noncommercial speech. *Id.* at 513, 101 S.Ct. 2882.

We find *Metromedia* inapposite to the instant case. The prohibition in the San Diego ordinance was directed at billboards, a well-established medium of communication used only to convey messages. That ordinance specifically differentiated between messages on the basis of content, permitting on-site advertisers to display commercial messages but prohibiting these same advertisers from displaying other commercial messages. It likewise permitted some non-commercial messages and prohibited others.[9] Because the ordinance was specifically directed to the subject matter of the billboards, it was content based in its intended purpose and effect.

In contrast, the Miami Beach ordinance does not address the subject matter of any message, but only the placement of physical structures on the public walkways intended for pedestrian traffic. Indeed, One World does not contest the city's stated intent, that it has imposed the regulation for purposes of traffic and aesthetics and not to control any particular message. One World argues that the ordinance is content based because while the city tolerates tables for restaurants on the west side of the Ocean Drive, it does not allow

---

[8]Under the ordinance at issue in *Metromedia,* "(1) a sign advertising goods and services available on the property where the sign is located is allowed;  (2) a sign on a building or other property advertising goods or services produced or offered elsewhere is barred;  (3) noncommercial advertising, unless within one of the specific exceptions [not applicable here] is everywhere prohibited." *Metromedia,* 453 U.S. at 503, 101 S.Ct. 2882.

[9]For example, the ordinance permitted some signs with religious symbols, but not other types of ideological signs. *Id.* at 514, 101 S.Ct. 2882.

nonprofit groups the same privilege. We find this argument without merit. Although there is differential treatment between restaurants on the one hand, and other commercial and nonprofit entities in terms of the placement of tables, such a distinction between nonprofit and commercial tables does not turn the ordinance into a content-based one—unless we were to interpret the ordinance as preferring food for the body over food for the soul, which we decline to do.

III

Having determined that the ordinance in question is a content-neutral regulation of protected First Amendment activity, we now move to the question of whether the regulation passes the time, place, and manner test. The Supreme Court has held that even in a public forum, the government may impose reasonable restrictions on the time, place, and manner of protected speech, provided the restrictions "[1] are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant government interest, and [3] that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

First, for the reasons previously stated, we find the ordinance to be content neutral in purpose and effect. Second, to meet the narrow tailoring requirement, the ordinance "need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation ... promotes a substantial government interest which would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 781, 109 S.Ct. 2746 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)); *see also Gold Coast Publications v. Corrigan,* 42 F.3d 1336, 1348 (11th Cir.1994) (business of government is to decide who to accommodate and at what sacrifice to other objectives). However, as *Ward* makes clear, this "does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests." *Ward,* 491 U.S. at 799, 109 S.Ct. 2746.

6

The city is entitled to make a judgment that removing tables from the west side of Ocean Drive, which is more crowded because it serves the popular outdoor cafés, serves the city's interest in eliminating obstacles to pedestrian flow. The Supreme Court has held that pedestrian traffic regulation is one of the more specialized and intensely local types of problems. *See Schneider v. State of New Jersey,* 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939) ("[M]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated."). Whereas an array of café tables adjacent to a restaurant is designed to let pedestrians stroll by while customers dine undisturbed, a single table staffed by an organization vending for profit or nonprofit goods and distributing information aims at causing people to stop, loiter, perhaps bargain, engage in dialogue, or obtain the correct change, all of which potentially impedes the efficiency of the pedestrian path created by the city.

There is also no question that the city's further interest in creating an aesthetic ambiance which will attract tourists to the historic Art Deco district—which it considers "the economic lifeblood of the city"—is a substantial government interest, especially where, as here, a designated historic area is at issue. *See Harnish v. Manatee County, Florida,* 783 F.2d 1535, 1539 (11th Cir.1986) ("Aesthetics is a substantial government goal which is entitled to and should be accorded weighty respect.") (citing *Metromedia,* 453 U.S. at 507, 101 S.Ct. 2882); *Messer v. City of Douglasville, Ga.,* 975 F.2d 1505, 1510 (11th Cir.1992) (government has more significant interest in aesthetics of historical areas than in other areas). It is well within the city's discretion to decide tables not related to a restaurant would interfere with the city's style and ambience which the city seeks to preserve on the west side of Ocean Drive. We are satisfied that the city's exception for restaurant tables and for no others on the west side of the street is dictated by the city's interest in regulating traffic and in the special aesthetic concerns of the historic district advanced by permitting diners to sit outside and take advantage of the area's warm weather and ocean air. Although there may be other ways to accomplish the city's goals, we find that in this case the narrow-tailoring requirement has been met.

Third, we are similarly satisfied that there are alternative channels for nonprofit groups to communicate their message. Since the ordinance does not regulate solicitation or vending or other First Amendment activity without the use of a table, One World can speak, communicate and sell its merchandise freely on the west side of the street. Indeed, One World is still free to speak, vend, disseminate ideas or merchandise, or solicit contributions anywhere in the Art Deco district, and for that matter in the entire city. The only activity prohibited under the ordinance is the use of portable tables on the west side of Ocean Drive. That the city's limitations may reduce the potential audience to some degree is of no consequence, for there has been no showing that the remaining avenues are inadequate. Because this regulation of physical structures on the public walkways is content neutral, narrowly tailored, and leaves open alternative channels of communication, we find that it does not present an unreasonable restriction on the time, place, and manner of protected speech.

Lastly, we are not persuaded by One World's claim that prohibiting the use of tables after sunset fails the time, place, and manner test. One World argues that the time restriction burdens substantially more speech than necessary to meet the governmental purpose, and fails to leave open alternative channels of communication. One World claims that the city's asserted interest in preventing crime does not reasonably fit the means of eliminating vending and soliciting from a table at nighttime because the city presented no evidence at trial that its expressive activities were any more a crime risk than other activities freely permitted on Ocean Drive during the evening hours.

Notwithstanding One World's argument, however, the record reflects that the city did provide evidence that vending from tables at night on the west side of Ocean Drive creates a public safety hazard. The city asserted that vendors carry large amounts of cash, are not protected by enclosed structures and, because the areas around the tables are not well lit, are vulnerable targets for criminal activity thereby endangering the vendors, their customers, and the public as a whole. One World did not controvert this evidence at trial. On the contrary, One World stipulated to the facts presented. Although another factual

8

situation might warrant a different result regarding the time restriction in this ordinance, on this record, One World is not entitled to relief.

Finally, One World argues briefly that the ordinance also violates the Equal Protection clause. We reject this argument because this issue was never presented to the trial court. For all of the foregoing reasons, the judgment of the district court is AFFIRMED.