JIM GALL AUCTIONEERS, INC., Plaintiff-Appellant,

v.

CITY OF CORAL GABLES, Defendant-Appellee.

No. 99-11517.

United States Court of Appeals,

Eleventh Circuit.

April 27, 2000.

Appeal from the United States District Court for the Southern District of Florida.(No. 97-03186-CV-PAS), Patricia A. Seitz, Judge.

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and OAKES[*], Senior Circuit Judge.

OAKES, Senior Circuit Judge:

Jim Gall Auctioneers, Inc. ("Gall") appeals the district court's award of summary judgment to the defendant, the City of Coral Gables ("City"), in this commercial speech case. Gall asks us to consider whether the City's regulations prohibiting auctions of non-homeowner goods at private residences in Coral Gables and the advertising of same infringe on Gall's First Amendment rights. We agree with the district court that they do not.

*BACKGROUND*

Gall is a for-profit corporation that auctions real and personal property in the Miami area and throughout Florida. In April 1996, the City issued three citations to Gall for "conducting business from a residence" in violation of a section of the City's zoning code which prohibits non-residential use within certain districts.[1] The citations were issued in response to a large three-day auction held at a private residence

[*]Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

[1]City of Coral Gables Zoning Code Section 3-1 states in pertinent part:

> In single-family residence or R-Use [Residential Use] Districts no use shall be permitted other than an R-Use and Family Day Care home.... In R-Use Districts no buildings or premises shall be used ... for a ... C or M-Use as defined herein.

"C or M-Use" is defined in the zoning code as commercial or mixed use. *See* Zoning Code §§ 3-

during which goods from a variety of vendors were sold but the home itself was not offered for sale. In June 1996, Gall arranged for a similar residential auction where the personal property to be sold was not owned by the homeowner hosting the auction. Gall's advertising and promotion for this auction drew a negative response from the City, and Gall ultimately moved the auction to the Biltmore Hotel. In May 1997, the City sent an opinion letter to Gall stating that an auction of real or personal property was a commercial activity that could not be conducted on residential property.

Gall initiated this action on September 12, 1997, in state court, making claims under the First and Fourteenth Amendments as well as the state constitution. Gall simultaneously moved to enjoin the City from interfering with a residential auction scheduled for the next day. In response to this auction, the City had already issued four citations to Gall for "advertising in a residential area" in violation of Section 18-12 of the Zoning Code. At an emergency hearing on the motion, the state court enjoined the City specifically from preventing the auction of the house itself on September 13, 1997, and generally from removing signs advertising (within regulated limits) the sale of residential properties. The court, however, did not enjoin the City from preventing the auction and advertising of vendors' merchandise.

After removing the case to federal court, the City moved to dismiss Gall's claims and the district court granted the motion with respect to the Fourteenth Amendment claim. The parties subsequently cross-moved for summary judgment on the First Amendment claims. In May 1999, the district granted summary judgment in favor of the City on the grounds that the City's prohibition of commercial auctions—i.e., auctions of property not owned by the homeowner—and their advertising in residential areas was narrowly tailored to achieve the City's substantial interest in neighborhood aesthetics and tranquility. This appeal followed.

*Discussion*

---

3—3-7. Additionally, the zoning code permits garage sales in residential areas, provided that "only personal property owned by the seller and usual to a household may be sold or offered for sale." Zoning Code § 6-9.

Gall challenges the decision of the district court on two fronts. First, Gall contests its conclusion that the City's prohibition of auctions of third-party (non-homeowner) goods at a residence does not violate the First Amendment. Second, Gall asserts that the First Amendment protects its right to advertise for such third-party auctions. We review the district court's decision *de novo. See Watkins v. Ford Motor Co.,* 190 F.3d 1213, 1216 (11th Cir.1999).

We can find no fault with the district court's conclusion on Gall's First Amendment claims, assuming that auction activity is commercial speech as contended by Gall. As the court recognized, Gall's advertising claim clearly presents an issue of commercial speech. As to Gall's claimed right to hold an auction, it is arguable whether the conducting of an auction is also commercial speech, as found by the district court, or instead simply commercial activity analyzed under a time, place, and manner test. *See A.B.C. Home Furnishings, Inc. v. Town of East Hampton,* 947 F.Supp. 635, 643 (E.D.N.Y.1996). However, we need not resolve the question because even if the auction activity is treated as commercial speech, it cannot survive the well-known test for the constitutionality of restrictions on commercial speech set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Applying *Central Hudson,* the district court asked whether the City's regulations (1) seek to implement a substantial government interest; (2) directly advance the asserted government interest; and (3) are narrowly tailored to serve that interest. *Id.* Finding the answers to all questions in the affirmative for both claims, the court found no infringement of Gall's commercial speech rights.

We see no reason to revisit the district court's finding that the City has a substantial interest in maintaining the aesthetics and tranquility of its residential neighborhoods, as well as in regulating traffic flow. The substantiality of these interests is fully supported by decisions of the Supreme Court and of this Circuit. *See Board of Trustees v. Fox,* 492 U.S. 469, 475, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507-08, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *One World One Family Now v. City of Miami Beach,* 175 F.3d 1282, 1288 (11th Cir.1999); *Sciarrino v. City of Key West,* 83 F.3d

3

364, 367 (11th Cir.1996); *Supersign of Boca Raton v. City of Fort Lauderdale,* 766 F.2d 1528, 1530 (11th Cir.1985)(citing cases); *cf. Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394-95, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (discussing generally goals of zoning restrictions).

Additionally, Gall fails to mount a serious argument that the City's regulations are not directly related to these interests. Pointing to the fact that the City permits garage sales and open houses, and limited advertising for them, Gall contends that the allowance of some commercial activity in residential neighborhoods undermines the purpose of the regulations. This argument has been roundly rejected in prior cases. *See Sciarrino,* 83 F.3d at 369 n. 7 ("The Supreme Court has conclusively indicated that a regulation may 'directly advance' its asserted ends, though it strikes at less than the entire problem"); *Don's Porta Signs, Inc. v. City of Clearwater,* 829 F.2d 1051, 1053 (11th Cir.1987) ("The Constitution does not require the City to choose between curing all of its aesthetic problems or curing none at all.").

The only remaining question under *Central Hudson* is whether the City's zoning regulations are narrowly tailored to serve the interests of neighborhood aesthetics, tranquility, and traffic control. As we recently reiterated, the regulations "need not be the 'least restrictive or least intrusive means' of serving the City's interest in order to qualify as 'narrowly tailored.' " *Smith v. City of Fort Lauderdale,* 177 F.3d 954, 957 (11th Cir.1999) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 788-89, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)); *see also One World One Family Now,* 175 F.3d at 1288 (city's ordinance allowing restaurant but not vending tables on street was narrowly tailored "[a]lthough there may be other ways to accomplish the city's goals."). Here, the City permits the advertising and auctioning of third-party goods in non-residential areas, evincing a willingness to balance the commercial interests of parties like Gall with the City's interest in preserving the character of its residential neighborhoods. We agree with the district court that this balancing effort and the absence of any evidence in the record of less-burdensome alternatives satisfies the requirement that the City's regulations be narrowly tailored. *See Sciarrino,* 83 F.3d at 370.

4

Gall, in its brief and at oral argument, raised the concern that the City will in the future engage in selective enforcement of its regulations based on whatever it decides are commercial activities. Gall believes that the district court's decision does not sufficiently clarify what Gall is and is not allowed to do, and that an injunction in necessary to prevent the City from interfering with Gall's activities. From the record before us, we see no ambiguity in the district court's holding that auctions of third-party goods, and the advertising of such auctions, are not permitted in residential neighborhoods. Moreover, Gall has provided no evidence beyond sheer speculation of a need to enjoin the future conduct of the City. We therefore dismiss these claims as without merit.

Because Gall has made no arguments in this appeal that require us to correct either the reasoning or conclusions of the district court, we affirm the decision below in its entirety.

AFFIRMED.