SUN–SENTINEL CO., Publisher of The South Florida Sun–Sentinel, and Miami Herald Publishing Co., A Division of Knight–Ridder, Inc., Publisher of The Miami Herald, Plaintiffs,

v.

CITY OF HOLLYWOOD, Defendant.

No. 03–60535–CIV.

United States District Court,
S.D. Florida.

July 25, 2003.

---

Sanford Lewis Bohrer, Holland & Knight, Miami, FL, David Steven Bralow, Tribune, Orlando, FL, for Plaintiff.

Robert Beatty, The Miami Herald Publishing Co., Miami, FL, Daniel Lawrence Abbott, City of Hollywood, Hollywood, FL, for Defendant.

### *ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION*

SEITZ, District Judge.

THIS CAUSE is before the Court on the Plaintiffs' Motion for Preliminary Injunction. [D.E. 4]. Plaintiffs, Sun–Sentinel Company ("Sentinel") and Miami Herald Publishing Company ("Herald"), sued Defendant City of Hollywood ("City") under 42 U.S.C. § 1983 for unconstitutional interference with Plaintiffs' First Amendment rights of speech and of the press. Plaintiffs request that the Court enjoin the City from interfering with Plaintiffs' distribution of newspapers in the City's public streets.

Upon review of the motion, response, reply, and after conducting an evidentiary hearing, the Plaintiffs' motion is denied. Plaintiffs have failed to show a substantial likelihood of success on the merits of their constitutional challenge. The Florida pedestrian regulation statute at issue is content-neutral and promotes a significant government interest, is narrowly-tailored, leaves open ample alternative avenues for communication, and is not overbroad or vague. Moreover, Plaintiffs have not shown that an irreparable injury will result if the Court does not grant a preliminary injunction or that the balance of harms favors granting the preliminary injunction. Finally, granting the preliminary injunction will disserve the public interests of safety and the free flow of traffic.

### *Factual Background*

Since 1984, Sentinel and Herald, publishers of *The South Florida Sun–Sentinel* ("*Sentinel*") and *The Miami Herald* ("*Herald*"),[1] respectively, have sold some of their newspapers on public streets through the news vendor program. Under this program, Plaintiffs sell their newspapers to distributors who provide the newspapers to independent contractors. These independent contractors distribute the newspapers to street vendors ("vendors") who ultimately sell the newspapers to automobile drivers and passengers.[2] Plaintiffs allege that vendors initially stand on medians and sidewalks at or near various intersections throughout South Florida during their sale shift and then enter the roadway when customers summon them. *Compl.* ¶ 17. To promote the safety of the vendor and automobile drivers, vendors wear bright-colored shirts or reflective vests, attend a pedestrian training session, and the independent contractors require the street vendors to conduct themselves in a workmanlike manner. Serpa Aff. at ¶ 12; Greenberg Aff. at ¶ 14. In addition, vendors may only sell the *Sentinel* between the hours of 5:00 a.m. and 11:00 a.m. during the weekday, and until 4:30 p.m. on Sunday. Greenberg Aff. at ¶ 14. Vendors sell the *Herald* between 5:00 a.m. and 11:00 a.m. on weekdays and until 5:00 p.m.

---

1. For purposes of clarity, *"Sentinel"* and *"Herald"* will refer to the newspaper publications themselves while "Sentinel" and "Herald" will refer to the Plaintiffs.

2. The program gives an employment opportunity to individuals who have had difficulty maintaining steady work (e.g., individuals from missions, probation programs, and labor pools). *Compl.* ¶ 14.

on Sundays. The vendor program has been commercially successful for Plaintiffs.[3]

This dispute arose when City police officers cited three *Sentinel* vendors under Section 316.130(5) of the Florida Statutes ("316.130(5)"). Florida Statute 316.130(5) reads: "[n]o person shall stand in the portion of a roadway paved for vehicular traffic for the purpose of soliciting a ride, employment, or business from the occupant of any vehicle." Fla. Stat. Ann. 316.130(5) (West 2002).

City police officers cited the *Sentinel* vendors on the morning of March 25, 2003 near the intersections of Sheridan Road and Highway 441, Hollywood Boulevard and Highway 441 and Hollywood Boulevard and Interstate 9. On that same morning, a City police officer cited a *Herald* vendor under 316.130(5) also on Hollywood Boulevard. City police officers observed that the vendors did not stand on the sidewalk or the median to conduct their sales but instead entered the paved roadway for traffic, stood on the paved roadway while traffic was moving, and returned to the median only to collect more newspapers. Courtney Aff. at ¶ 5, ¶ 7; Camilo Aff. at ¶ 3, ¶ 6. The City has announced that it will cite any person who sells newspapers on the streets and will arrest repeat offenders. *Compl.* at 22.

Plaintiffs moved to enjoin Defendant from interfering with the vendors' sales because they contend that 316.130(5) is facially unconstitutional, and the City's enforcement of it violates Plaintiffs' First Amendment rights as applied. Specifically, Plaintiffs argue that 316.130(5) is: (1) an unconstitutional content-based restriction upon Plaintiffs' free speech and press rights; (2) is, alternatively, not a valid time, place, and manner regulation of speech; (3) is unconstitutionally overbroad; and (4) violates Plaintiffs' 14th Amendment due process rights on vagueness grounds. Defendant responds that 316.130(5) is a content-neutral restriction on conduct, is narrowly tailored, leaves open ample avenues for communication, and promotes the City's interests in public safety and the orderly flow of traffic.[4]

### Discussion

### I. Standard

To obtain a preliminary injunction, Plaintiffs must establish: (1) that there is a substantial likelihood that they will prevail on the merits; (2) that there is a real threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm an injunction may impose on the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir.2001) (citation omitted). A preliminary injunction is "an extraordinary and drastic remedy that should not be granted unless the [plaintiff] clearly carries its burden of persuasion on each of these prerequisites." *Id.* at 1166.

---

**3.** In Hollywood, people buy 2,600 *Herald* papers each weekday and 2,900 *Herald* papers each Sunday from vendors. Serpa Aff. at ¶ 6. People in Hollywood buy between 1,500 and 2,000 *Sentinel* papers each weekday and between 2,000 to 3,000 *Sentinel* newspapers each Sunday through the program. Greenberg Aff. at ¶ 7.

**4.** Plaintiffs argue that anti-solicitation is the principal purpose behind 316.130(5). Defendant contends that promoting public safety and the free flow of traffic were the motives behind the statute. Neither side could point to any legislative history behind 316.130(5). The general heading of Florida Statute Annotated 316.130 is "Pedestrian obedience to traffic control devices and traffic regulations." Fla. Stat. Ann. 316.130 (West 2002).

## II. Substantial Likelihood to Prevail on Merits

■ First, to establish the requirement of a substantial success on the merits, Plaintiffs rely on the First Amendment. *Id.* The First Amendment states that "Congress shall make no law ... abridging the freedom of speech, or of the press ..." U.S. Const. amend. I. These First Amendment rights apply with equal force against state and municipal government action through the Fourteenth Amendment. *See Near v. Minnesota*, 283 U.S. 697, 707, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) ("the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action."). Moreover, the "distribution of newspapers, no less than the publication of the newspapers themselves ..." enjoys First Amendment protection and thus, the First Amendment limits the "type and content of the restrictions it may place on this activity." *Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation*, 322 F.3d 1298, 1305 (11th Cir.2003) (citation omitted).

A city's power to limit protected expressive activity, such as the distribution of newspapers, in public fora or "places which by long tradition or by government fiat have been devoted to assembly and debate ..." is especially delimited. *Perry Edu. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Streets are public fora and "have immemorially been held in trust for the use of the public ... for purposes of assembly, communicating thoughts between citizens, and discussing public questions."

*Id.quoting* (*Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)).

### A. Time, Place, and Manner Restriction of Speech in Public Forum

■ The parties agree that Hollywood public streets are public fora.[5] Therefore, one of two constitutional standards apply. If 316.130(5) is a content-based restriction, the state bears a high burden to show that "its regulation is necessary to serve a compelling state interest and it is narrowly drawn to achieve that end." *Perry Education*, 460 U.S. at 45, 103 S.Ct. 948. On the other hand, if 316.130(5) is a content-neutral enactment, then the state may enact a less-scrutinized time, place, and manner regulation of expression. A content-neutral regulation must be: (1) content-neutral; (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels of communication. *Id.* (citations omitted). For the reasons stated below, the Court concludes that 316.130(5) is content-neutral, and therefore, the time, place, and manner analysis applies.

### 1. Content Neutral Restriction

■ To determine a statute's content-neutrality, courts look at whether "the statute distinguishes between prohibited and permitted speech on the basis of content." *Frisby v. Schultz*, 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). Specifically, "the principal inquiry in determining content neutrality, in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of *disagreement with*

---

5. Defendant concedes that Hollywood streets are public fora. *Def.'s Answer and Affirmative Defenses*, ¶ 13 ("Hollywood admits that public streets and sidewalks are traditional public fora...."). However, other motorist-vending cases have discussed whether the paved road-

way for traffic is a traditional public forum. *See, e.g., ACORN v. City of Phoenix*, 798 F.2d 1260, 1264–67 (9th Cir.1986) (analyzing character of streets open to motorized traffic to determine if it is a public forum).

*the message it conveys."* *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (emphasis added). The *Ward* court clarified, "[t]he government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

■ Therefore, the Court must analyze whether the state, because it disagrees with the message the Plaintiffs convey, has prohibited a person from standing "in the portion of a roadway paved for vehicular traffic for the purpose of soliciting a ride, employment, or business from the occupant of any vehicle." Plaintiffs do not contend that the state disagrees with Plaintiffs' message or viewpoint nor do they provide any evidence that Florida's legislators attempted to suppress any speech with which they disagreed by passing 316.130(5). *See Ater v. Armstrong,* 961 F.2d 1224, 1229–30 (6th Cir.1992) ("[w]e cannot believe ... that Kentucky prohibited nearly all forms of pedestrian activity upon its roads, excepting only solicitation, because it wished to censor expression."). Instead, Plaintiffs argue that 316.130(5) is impermissibly content-based because it permits some conduct such as political campaigning but prohibits vendors and individuals soliciting business, a ride, or employment from standing in the roadway paved for traffic. Def's Mot. at 7.

However, merely because the City prohibits some expressive conduct in furtherance of a significant government interest without prohibiting all such expressive conduct does not transform a law into a content-based restriction. *See One World One Family Now v. City of Miami Beach,* 175 F.3d 1282, 1287 (11th Cir.1999). In *One World,* the plaintiffs, non-profit groups wishing to set up sidewalk tables to pass literature, argued that a Miami Beach ordinance enacted to control pedestrian traffic flow and preserve the aesthetics of a popular tourist street was content-based. *Id.* The ordinance permitted restaurant cafe tables on the sidewalks but prohibited the non-profit groups' portable tables to distribute literature. The Eleventh Circuit concluded that this differential treatment between "nonprofit and commercial tables [did] not turn the ordinance into a content-based one ... unless we were to interpret the ordinance as preferring food for the body over food for the soul, which we decline to do." *Id.*

Other federal circuits and a state supreme court have followed similar reasoning and found statutes similar to 316.130(5) to be content-neutral and ultimately, constitutional. *See, e.g., Ass'n of Cmty. Org. for Reform Now v. St. Louis County,* 930 F.2d 591, 593 (8th Cir.1991) (upholding statute which reads: "[n]o person shall stand in a roadway for the purpose of soliciting a ride, employment, charitable contribution or business from the occupant of any vehicle" against a First Amendment challenge); *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge,* 876 F.2d 494, 496–97 (5th Cir.1989) (upholding Baton Rouge ordinance which reads: "no person shall be upon or go upon any street or roadway ... for the purpose of soliciting employment, business, or charitable contributions of any kind from the occupant of any vehicle"); *ACORN,* 798 F.2d at 1262 (upholding Phoenix statute which reads: "[n]o person shall stand on a street or highway and solicit, or attempt to solicit, employment, business, or contributions from the occupants of any vehicle"); *Denver Publ'g Co. v. City of Aurora,* 896 P.2d 306, 309 (Colo. 1995) ("[i]t shall be unlawful for any person to solicit employment, business, contributions, or sales of any kind, or collect monies for the same, from the occupant of

any vehicle travelling upon any street or highway ...").

These courts opined that identical treatment of different categories of speech is not the test to decide whether an enactment is content neutral; rather, the analysis focuses on whether the state prefers or disagrees with certain viewpoints within those categories. *Ater*, 961 F.2d at 1229 n. 4 ("it absolutely defies reason to hold that Kentucky excepted solicitation [but prohibited other types of expressive conduct] because it wished to suppress certain ideas, information, viewpoints ..."). These courts decided whether the statutes in question were applied evenhandedly to each person within each category of speech, not whether certain categories were allowed or prohibited. Thus, 316.130(5) is not content-based simply because it "does not burden all communication potentially disruptive to traffic." *Denver Publ'g*, 896 P.2d at 316.

In sum, Plaintiffs do not contend that 316.130(5) targets the Plaintiffs' message or that the statute expresses disagreement with the message. Nor do Plaintiffs argue that Florida seeks to censor or inhibit their message. The fact that 316.130(5) prohibits certain solicitors seeking a ride, employment or business but allows other forms of solicitation does not convert the statute into a content-based one.[6] Given the conclusion that the statute is content neutral, the Court must examine whether it is narrowly tailored to serve a significant government interest.

### 2. Narrowly Tailored to Serve a Significant Government Interest

■ A restriction is narrowly-tailored "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798, 109 S.Ct. 2746. It will be considered narrowly tailored "[s]o long as the means chosen are not substantially *broader* than necessary to achieve the government's interest ... the regulation will not be invalid simply because a ... less-speech-restrictive alternative [exists] ... [or] simply because there is some imaginable [less-restrictive] alternative..." *Id.* at 800, 109 S.Ct. 2746 (emphasis added). A court must not second guess a responsible decision maker's means " 'concerning the most appropriate method for promoting significant govern-

---

**6.** The principal authority on which Plaintiffs rely for the the proposition that 316.130(5) is content-based because it allows certain categories of solicitation is *Bischoff v. Florida.* 242 F.Supp.2d 1226, 1236 (M.D.Fla.2003). *Bischoff* struck down Florida Statutes 316.2045 and 316.2055 as unconstitutional. In *Bischoff*, religious activists protested Walt Disney World's alleged support of homosexuality. The activists carried signs and handbills expressing their criticism of Walt Disney's policies and were arrested for violations of Florida Statutes 316.2045 and 316.2055. The *Bischoff* court reasoned that one of the statutes, 316.2045, " 'facially prefers the viewpoint expressed by registered charities and political campaigners by allowing ubiquitous and free dissemination of their views, but restricts discussion of all other issues and subjects ...' " and was therefore content based. *Id.* at 1235 (finding the other statute

at issue, 316.2055, was content neutral but unconstitutional because it was not narrowly tailored and was vague).

However, this Court views the proper test to determine content neutrality as whether the state disagrees with a speaker's message. Thus, discrimination *within* a certain category of solicitation may be content-based. No such discrimination *within* a category exists in 316.130(5). Moreover, 316.130(5), unlike 316.2045, does not facially prefer charitable activity or political campaigning.

In addition, 316.2045 states: "it is unlawful, without proper authorization or a lawful permit, for any person or persons wilfully to obstruct the free, convenient and normal flow of traffic..." Fla. Stat. Ann. 316.2045. Unlike in *Bischoff*, 316.130(5) does not vest any official discretion in a state or local official for prior authorization.

ment interests,' " or conflate the wisdom of a statute with its constitutionality. *Id.; Ater,* 961 F.2d at 1229. Courts owe some deference to the laws state legislatures enact to accommodate competing public interests. *Hill v. Colorado,* 530 U.S. 703, 727, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).

■ Moreover, it is undisputed that the state has significant interests in vehicle and pedestrian safety and the free flow of traffic. *See Ass'n of Cmty.,* 930 F.2d at 594; *ACORN,* 798 F.2d at 1269; *Denver Publ'g,* 896 P.2d at 313. Also, although there was no clear evidence presented of the vendors being hurt on Hollywood's roadways, "[t]he government need not wait for accidents to justify safety regulations." *Ass'n of Cmty.,* 930 F.2d at 596; *see also, News and Sun–Sentinel Co. v. Cox,* 702 F.Supp. 891, 900 (S.D.Fla.1988) (" '[i]t requires neither towering intellect nor an expensive 'expert' study to conclude that mixing pedestrians and temporarily stopped motor vehicles in the same space at the same time is dangerous.' ") (citation omitted); *Denver Publ'g,* 896 P.2d at 316 ("the City need not wait for misfortune to strike to demonstrate the Ordinance addresses legitimate governmental interests . . .").

Relying on *Cox,* Plaintiffs contend that even assuming 316.130(5) is content-neutral, it still violates the First Amendment because it is not narrowly tailored, 702 F.Supp. at 901–02. Sentinel and Herald contend that the statute should take into account the age of the vendors, whether the vehicles vendors approach are moving or stopped, the volume of traffic at a particular intersection, the time of day, and a host of other variable factors. *Id.* Plaintiffs point out that vendors have attended safety training courses, wear bright-colored clothing during their sale shift, and work only during daylight hours, and thus, 316.130(5) does not take into consideration the vendors' special safety precautions.

However, "it is the regulation's relationship 'to the overall problem the government seeks to correct,' not its necessity in [the Plaintiffs'] particular case, that determines its validity." *Ass'n of Cmty.,* 930 F.2d at 596 (citation omitted). The relationship between 316.130(5) and the state's interests in safety and smooth traffic flow is a sound one although the legislature could have taken other factors into consideration. *Id.* The Court does not second guess the legislature's wisdom in enacting a statute or come up with what the Court believes is a better alternative.

Here, the City is "eliminat[ing] no *more* activity than was considered necessary" to promote significant government interests. *Ater,* 961 F.2d at 1229 (noting that because Kentucky's legitimate interest would support prohibiting all activity, including solicitation, Kentucky could decide not to prohibit solicitation). Moreover, the government need not devise the *least* restrictive regulation to curb the problem or not enforce 316.130(5) because of imaginable alternative solutions. *Ward,* 491 U.S. at 800, 109 S.Ct. 2746. Thus, 316.130(5) does not substantially burden more speech than is necessary. In fact, 316.130(5) is an underinclusive measure. Therefore, the statute is narrowly tailored to serve a significant government interest.

### 3. *Ample Alternative Opportunities for Communication*

■ It is undisputed that 316.130(5) leaves open ample alternative opportunities for communicating the Plaintiffs' message. *Acorn,* 798 F.2d at 1271 (listing alternative avenues for selling newspapers including soliciting pedestrians, home delivery, and newspaper vending machines); *see also, One World,* 175 F.3d at 1288 (noting that nonprofit groups denied right

to set up literature table on popular tourist sidewalk could still stand on same sidewalk, could solicit, vend, and communicate to pedestrians). Here, Plaintiffs have ample opportunities to communicate their message to newsreaders. For example, those same drivers and passengers who buy their newspapers from vendors can buy the same newspaper at a convenience store, a news rack, a vending machine, through home delivery or delivery to their work address.

Importantly, 316.130(5) does not completely foreclose the vendors' business opportunities on Hollywood's streets. So long as the vendors stand on the median or sidewalk, and never enter the paved roadway, the vendors may still solicit stopped automobile drivers and passengers. Thus, if the vendors follow 316.130(5), their interests and those of the City can coexist. *See, e.g., Ass'n of Cmty.*, 930 F.2d at 594 ("[the section] does not forbid solicitors from soliciting drivers as long as they stand off the roadway-on the curb, median . . . of the road.").

#### B. *Statute Not Overbroad*

 As an alternative position, Plaintiffs assert that the statute is overbroad. A statute is overbroad when it has "such a deterrent effect on free expression that it should be subject to a facial challenge even by a party whose conduct may be unprotected." *Krishna*, 876 F.2d at 499 ("the cases make clear that 'overbreadth' is not simply the converse of 'narrowly tailored' "). " 'The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Hill*, 530 U.S. at 733, 120 S.Ct. 2480. Plaintiffs "do not show that 316.130(5) will inhibit the First Amendment rights of other individu-

als or demonstrate that the conduct of other parties is more likely to be protected by the First Amendment than their own . . ." *Krishna*, 876 F.2d at 499–500. Instead, Plaintiffs argue that 316.130(5) is overbroad because it bans "adults who receive safety-training, wear bright-colored clothing" and does not distinguish between adults and teenagers on the streets. Def.'s Mot. at 12.

The plain language of 316.130(5) does not restrict protected activity, namely actors who stand on the sidewalk or on the median and who do not solicit a ride, employment, or business while standing on the roadway. *See ACORN*, 798 F.2d at 1273. Plaintiffs have not shown that a substantial amount of protected activity would be swept in the legitimate ambit of 316.130(5) or that "the impact of [316.130(5) ] on the conduct of other speakers will differ from its impact on [them] . . ." *Hill*, 530 U.S. at 732, 120 S.Ct. 2480. Thus, Plaintiffs have failed to show that the statute is overbroad.

#### C. *Statute is not Void for Vagueness*

 Sentinel and Herald also argue that 316.130(5) is void for vagueness because the terms "soliciting," "business," or "stand" are not defined and thus the statute does not give sufficient warning to the reader as to what conduct is prohibited. *See Bischoff*, 242 F.Supp.2d at 1238 (finding failure to define terms in statute to be vague). A statute can be vague if: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) it authorizes or even encourages arbitrary and discriminatory enforcement.[7] *Hill*, 530 U.S. at 732, 120 S.Ct. 2480. However, courts must not play the game of "con-

---

**7.** Plaintiffs do not that contend 316.130(5) is vague because it authorizes or encourages

arbitrary or discriminatory enforcement.

jur[ing] up hypothetical cases in which the meaning of ... terms will be in nice question ...because we are 'condemned to the use of words, [and] can never expect mathematical certainty from our language.'" *Id.* at 733, 120 S.Ct. 2480.

Plaintiffs point to the testimony of two City officers who were confused as to what activity is prohibited under 316.130(5). *See* Malerba Dep. [30:7–19; 32:7–11; 32:20–22; 34:5–14; 35:8–13; 36:17–37:4]; Courtney Dep. [31:18–22; 33:22–34:14]. Plaintiffs contend that if two City police officers cannot agree on the correct interpretation of the statute, then surely the average person cannot tell what conduct falls within 316.130(5)'s prohibitions. Thus, Sentinel and Herald argue that 316.130(5) gives inadequate guidance to police officers and is unconstitutionally vague. *Id.*

However, the testimony of two police officers compared to the knowledge of scores of police officers does not demonstrate that police officers generally do not know what activity 316.130(5) prohibits. The statute grants officers the "exercise of some degree of police judgment" necessary for the enforcement of the laws. *Hill,* 530 U.S. at 733, 120 S.Ct. 2480. The statute provides comprehensible guidelines about what conduct on the paved roadway is prohibited, namely solicitation for a ride, business, or employment even though some of these terms are not defined with mathematical certainty, and Plaintiffs can invoke a parade of hypothetical theories. *See, e.g., Ass'n of Cmty.,* 930 F.2d at 593 (upholding state statute although terms: "stand," "soliciting," and "business," were left undefined); *Krishna,* 876 F.2d at 495–

96 (upholding municipal ordinance which did not define terms: "soliciting," or "business").

■■■■■ Moreover, the facial challenger to a state statute based on vagueness "must establish that no set of circumstances exists under which the act would be valid." *Horton v. City of St. Augustine,* 272 F.3d 1318, 1329 (11th Cir.2001) *quoting United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[8] "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid ..." *Id.* Here, an individual who stands on the portion of the roadway paved for traffic to solicit a ride would violate 316.130(5). Therefore, because a set of circumstances would exist where the statute would be valid, 316.130(5) is not void for vagueness on its face. *See Horton,* 272 F.3d at 1329–30.

### III. *Irreparable Injury*

■■■ Plaintiffs have also not established that there is a real threat of irreparable injury if the injunction is not granted. To establish irreparable injury, Plaintiffs must prove that the injury they will suffer is "neither remote nor speculative, but actual and imminent." *Northeastern Fla. Chapter of Assoc. of Gen. Contractors of Amer. v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (citation omitted). Because the Court finds 316.130(5) survives Plaintiffs' constitutional challenge it follows that Plaintiffs would not suffer an imminent unconstitutional restriction of their First Amendment rights. Further-

**8.** Although the Eleventh Circuit has recognized that the " 'Salerno rule' has been subject to a heated debate in the Supreme Court ..." it has applied the rule. *Horton,* 272 F.3d at 1330; *Williams v. Pryor,* 240 F.3d 944, 953 (11th Cir.2001).

Special exceptions to the general *Salerno* rule may apply in prior-restraint cases such as "before-the-fact permitting and licensing regimes." *Horton,* 272 F.3d at 1331–32. Plaintiffs' challenge does not fall into the special exception.

**1334**

more, if Plaintiffs seek monetary damages based on non-constitutional grounds, "harms that may be remedied through the award of monetary damages are not considered 'irreparable.'" *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1276 (11th Cir.2001) (citation omitted).

### IV. *Balancing of Harms and the Public Interest*

Finally, Herald and Sentinel have not demonstrated that the threatened injury they would suffer outweighs the threatened harm an injunction may impose on Defendant and that granting an injunction will not disserve the public interest. *Suntrust*, 252 F.3d at 1166. Defendant has a significant interest in enforcing a constitutional Florida statute to promote public safety and the free-flow of traffic and the public shares those interests. While it is true that vendors cannot enter the roadway to sell newspapers, nothing prevents them from selling newspapers to stopped automobile drivers and passengers so long as they remain on the sidewalk or median and do not enter the paved roadway.

Furthermore, Plaintiffs also have numerous alternative avenues to disseminate their message at newsstands, through home-delivery service, business-address delivery, at convenience stores, or at vending boxes. Thus, *Herald* and *Sentinel* readers would have ample opportunities to obtain the Plaintiffs' news of the day. Therefore, it is hereby,

ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.